The final case, number 25-1638, Inaru Nadia de la Fuente Diaz et al. v. Jennifer A. Gonzalez Colon et al. At this time, would counsel for the appellants please introduce themselves on the record to begin. May it please the Court, Omar Andino on behalf of defendants, Governor Jennifer Gonzalez Colon, Secretary Victor Ramos Otero, and Wanda Jovett Diaz. Your Honor, Chief Judge Barron, I respectfully request three minutes for rebuttal. You may. The question in this case is whether the Constitution requires the Puerto Rico government to add a third option consisting of something that is not sex, consisting of an X marker specifically, in a government issued birth certificate. The answer to that question is no. Here, no one may self-select an X marker on a birth certificate. No one, irrespective of sex, gender, may reflect an X marker on a sex certificate. That framework does not infringe on any fundamental right. It is not proof of animus against any group. What the district court did in this case was shift the burden of proof to the government and substitute its own policy judgment for that of the political branches. For that and other reasons, the district court judgment should be reversed. I am open to court questions. Under Puerto Rico law, you can have an updated birth certificate if you've changed gender status, correct? Yes, Your Honor. After Arroyo-Gonzalez, people can change between male and female. The district court focused on the fact that since that's allowed, what reason is there under rational basis review for not allowing this group of people to get an updated birth certificate? What's the answer to that? So, Your Honor, the first thing I would say is that we have to go back to the Arroyo-Gonzalez case that was decided in 2018. If we look at the Arroyo-Gonzalez... Counsel. Sorry. Yes, Your Honor. Yes, we've read the case. We know what it holds. We know that no court of appeals ever affirmed it, but that Puerto Rico decided not to appeal it. They're not the same group of plaintiffs. They're actually quite different. No, Your Honor. They're not similarly situated, and this is something that is clear from the record. The Arroyo-Gonzalez case, its concerns, it's inside the binary system, male and female, and that's supported even by the form that the district court in Arroyo-Gonzalez attached to its opinion. The opinion has a form attached as Exhibit A, and if you look at the policy of the Department of Health, that policy just copied what the Arroyo-Gonzalez case said. So they're not similarly situated because they don't identify as male or female. that you make is that under various federal laws and regulations, they don't accept non-binary. They only refer to binary choices and that there would be a very large regulatory burden imposed on Puerto Rico in reporting to the federal government about health care and other things that would up the administrative costs. I think I've summarized it, but could you spell out the details of that, please? Yes, Your Honor. Certainly one of the interests, the main interest of the government is what Your Honor said, the administrative concerns that are raised by this case. For example, this is in our brief, but for example, we will have to create new protocols to include a new marker that would be only created for the birth certificates and that it's not recognized for driver's license or other government documents. So we will have to amend the protocols and for sure we will have to engage in contracting new employees to take that job and to scrutinize the new forms that would be had to be added to birth certificates. And probably this is something that is really important. There's no limiting principle in the district court's order. Sorry. I asked specifically about the burdens being imposed on Puerto Rico to comply with federal law requirements. Could you talk more about that? Yes, Your Honor. Right now, and as the or case that is obviously before this court too, the federal government does not recognize an X marker in federal documents. So that would be a burden obviously on the government. Therefore what? Sorry, Your Honor? Therefore what? Therefore the cost, for example, of implementation would be very, very high. We will have to create new protocols that would be contradicting what the federal government would not accept. Would not accept, no.  So let's, so what? Puerto Rico then has to take someone who has declared themselves non-binary and arbitrarily assigning a gender in order to get reimbursement from the federal government? Yes, Your Honor. And then the federal government would not accept that document. And I think about, for example, the Violence Against Women Act comes to mind. That law that obviously assigns funds to states and territories to fight against domestic abuse against women. For example, in that type of case, that would certainly be a problem. If someone goes to a government office and asks for aid under the Violence Against Women Act, that would be an example that would be really, really useful. And it would certainly create great confusion and accuracy at that point. Is there anything in the record about the number of people or percent of population that would consider themselves binary and take advantage of the district court's decision? At least, not that I'm aware of. There's some amicus that do address that at least, I think, 30% of transgenders are non-binary. But that's something that I think it's debatable. I mean, I'm not sure there's a number. Thirty percent. Sorry? Thirty percent. I do think that some amicus say that there's 30% non-binary transgenders. So, yes, I think that's the number that's on the record, at least that comes to my mind right now. You argue that the birth certificate policy does not classify based on sex or transgender status. Can you just explain your position? Yes, Your Honor. I think it's really important to look at what the Supreme Court did in Scarametti for this point and after the GVR. We do know that GVR is not a decision on the merits, but we do think that guidance is highly appropriate and the Supreme Court guidance there is important. In Scarametti, the SB1 had a direct reference to transgender and to sex. We do acknowledge that that was a case that concerned also medical treatment and age classification. But the court said that mere reference to sex is not the same as discriminating on the basis of sex or classifying on the basis of sex. Because to classify on the basis of sex, you have to treat the two biological sexes differently. And that's not happening here. So, in that sense, there's no classification. I don't think of a better example of mere reference to sex as in this case. The government is just listing the two biological sexes. There's no such thing as a non-binary sex. And the Supreme Court has never recognized, or at least I don't think of any court that has recognized a sex that is non-binary. The other cases that the Court of Appeals have decided have to do with transgenders moving between the binary system. That's not the question here. I think the question here is narrower. The question here is whether the government must add a third category option, because here they can move between the binary system as ordered by Arroyo-Gonzalez. Thank you. Okay. Thank you, Counsel. At this time, would Counsel for the Appellees please introduce himself on the record to begin? Good morning, Your Honors. I may please support Omar Gonzalez-Pagan for the Plaintiffs' Appeals. Your Honors, birth certificates are common and foundational identity documents. The government of Puerto Rico indeed uses them as proof of identity when it comes from enrolling in school to obtaining certain professional licenses and even exercising fundamental rights, like when registering to vote or obtaining a license under the Second Amendment. I think what is important and what the briefing and argument of my opponent and the government here misses is that we must give effect to the statutory scheme adopted in the 2020 Civil Code. That scheme makes explicit distinctions between the original birth record and the birth certificate that is provided to a person for identification. Do you agree we're on rational basis review? Your Honor, certainly the court below we contend correctly has found that the current policy doesn't pass rational basis. But you're not making an argument on appeal, or did you make an argument below that it should be subject to heightened scrutiny? We made an argument below that it should be subject to heightened scrutiny. But the district court relied solely on rational basis review. The district court explicitly stated that it did not reach heightened scrutiny because of it. Taking the statutory scheme as it now exists as a given, under rational basis review, I take the government's argument in response that there are rational reasons for the treatment of transgender persons with respect to birth certificates to be different. What's your answer to that? So my answer to that, Your Honor, is that this is a case in which rational basis cannot be met. And that is because either the basis that have been identified are not rationally related or illegitimate. Judge Lynch, just to follow up on your set of questioning with regards to communications and accuracy with regards to health records and communications with the federal government, those communications are based on the statistics file held in Vital Statistics. That is based on the original birth record. It is not based on the identification birth certificate that is provided to a person. We know that, and we know that there is no problem with that, because 16 other states provide X markers for non-binary transgender persons. But what about the argument that the reason for the updating that's allowed compared to the historical birth certificate was allowed for one group because of the concerns of privacy that that group had demonstrated? There's no contention this group has a similar concern for privacy as the basis for the need to update. So, Your Honor, if you go back to Arroyo, there were actually two bases on their due process in which it was decided. It was decided based on informational privacy as well as decisional privacy. With regards to informational privacy, we concede that, of course, being able to have a gender marker other than male or female by necessity communicates your non-binary transgender status. That's not true, and you're not even making an argument that that's the reason this group needs the updating of the birth certificate. That's correct. So since we're on rational basis review and we just have to be able to hypothesize any conceivable reason for the distinction, why couldn't we just say, well, the conceivable basis for the distinction is that the reason they did it for that group is because that group had a concern that this group is not asserting? Well, Your Honor, the reason is not about why they did it for somebody else. It's why they're not prohibiting it for this group. Right, but what I'm saying is that the only thing we... Your argument, I thought, takes as the baseline correctly the current state of Puerto Rico law. Correct. Which allows some updating. The advantage for you of saying that is it takes off the argument that it's irrational to prohibit all updating. Correct. Right? And I see why you say that, because there might be a rational reason to prevent any updating, which is this is just a historical record. We don't make records beyond historical records. That would be a tough hill to overcome on just rational basis review. In Arroyo, they got around that concern by saying there was a fundamental privacy right. That led to the change in the regime. So now we do allow updating. So you don't confront the problem, well, you can't do updating. No, you can do updating. We've seen you do it. So why not update for this group? But what I'm asking you is why isn't it rational for Puerto Rico to say, well, we update for some groups and not for other groups, and we allow updating for those groups that have demonstrated a privacy interest. This group hasn't asserted even a privacy interest. Therefore, it's conceivably rational to distinguish between the two groups with respect to allowing them to update. What's wrong with that argument? So, Your Honor, I think one thing is that I understand that this is based on the assumption that we're proceeding on the rational basis, and we have to negate every basis. But this is not an argument that the other side has made to the extent that this Court does reach out. To the extent that the Court reaches out. I understand that on the rational basis the burden is on us to negate every basis. But that basis is not rationally related to the policy at issue. The statute actually distinguishes for the original birth record the sex at birth versus for the identification birth certificate, the gender of the person or gender. And that is actually the words effectuated in 31 LPRA 7655. That is the 2020 Civil Code. When you allow some people to provide for a correction to various fields, not just gender, but also name, parentage, it no longer is about reflecting historical facts, which is what is contained in the original birth record, again, which communicates with databases and public health databases both federally and with other states. Here, the policy, which is extra textual, by the way, the designation of male or female, the limitation of male or female for gender, is not contained in the LPRA, the Civil Code. It is actually adopted as a matter of policy and practice by vital statistics. The distinction is being imposed only on non-binary people. And so there must be a reason for the imposition of the burden on non-binary people, not for the extension of the benefit to somebody else. So that's why I think that the adoption, which we commend, and we actually are happy with the decision by the Puerto Rico government to provide accurate birth certificates to binary-identified transgender people. We think this is the right policy, and we commend that. But that is not a reason to also discriminate. Maybe I just need to understand how Puerto Rico law works after the change. So could you just explain what's the legislative framework given the change? I take it is there two statutory provisions that relate to birth certificates now or still just one? So that Puerto Rico operates on a Civil Code basis. It completely rewrote the Civil Code in 2020. The provision at issue is 41 LPRA 7655. That is a governing provision with regards to birth certificates. Okay, and with respect to that provision, I take it when you're born you get a birth certificate under that provision? When you're born you have an original birth record. Yes. Correct. So does the provision that you're challenging speak to that original birth record or not? So the provision distinguishes between the original birth record, which reflects historical facts and doesn't allow alterations to the sex at birth, and the identification birth certificate, which reflects a person's gender and allows for those changes to occur. And it is not limited to male or female on the basis of that. So prior to this statutory change, there was no separate provision for getting an identification birth certificate or was there? Prior to this change, Puerto Rico treated the birth record and the birth certificate as congruent. And now they have made a distinction and the law reflects that distinction. Correct. And in making that distinction in the law, that law did not extend that change to the group of people that you're representing. So respectfully, Your Honor, the law is silent on that point. Well, if you're making an argument that Puerto Rico law itself covers you, that's not a constitutional challenge. We have no reason to address the constitutional challenge. You're right on that. The challenge is to the policy that interprets this statute as only limiting. You're not making an argument to us that you have that right under Puerto Rico law itself under the statute. We argue that the Puerto Rico statute doesn't prohibit it, Your Honor. Well, then are you just challenging the policy as inconsistent with the Puerto Rico statute? We argue that the policy is inconsistent with the equal protection guarantee. No, I know that. You can only make that argument if the policy is permissible under the statute. Otherwise, we have no reason to reach the constitutional question. We think it is an unconstitutional application or interpretation of the statute. Yeah, but that we only reach that question if it's a permissible statutory application of it. If it's not, we don't get to the constitutional question. Your Honor, we do get to the constitutional question on whether it's a statute or the policy. At the end of the day, our clients are faced with a clear prohibition of being able to obtain... Right, because you're taking it that Puerto Rico law, the civil code, allows this practice. Correct. And then you say that's unconstitutional. That's fine. That's the structure of most constitutional challenges. Everything's good about that, okay? But the consequence of that is that the Puerto Rico law that you're challenging is providing by the change for certain groups to get the benefit of that change and not others. And the question is, given that there's a distinction between the two groups with respect to why you might want to extend that opportunity, why isn't that rational? Your Honor, it's not rational because there has to be a rational connection between the prohibition and the legitimate interest at issue. And so if the interest is to protect the privacy, informational privacy, of binary identified people who are transgender or intersex, that is not furthered or is not rationally related to a prohibition on non-binary transgender people being able to obtain a correct or congruent gender marker on their birth certificate. So the question is one of fit or relation between the burden being challenged and the interest being asserted. We don't disagree that that may be a legitimate interest, but it is not rationally related to prohibiting non-binary people from being able to obtain congruent identification birth certificate. Your Honor, Judge Lynch, you inquired as to the policy and the burden to comply with regards to the federal government and or administrative costs. I will add that we're not asking for something that is new or amorphous. In fact, in this very circuit, five, multiple of the states provide. That other states may make different policy decisions on their own does not mean that a state making a different policy provision has no rational basis. That argument doesn't go anywhere. On its own, it does not, Your Honor, and that's not the argument that I'm making. But it does negate the idea that somehow the funds or public health money for the government will somehow not be received because they recognize an X marker. We know that not to be the case because 16 states do provide for that. Additionally, Your Honor, I think it is important to keep in- They may have decided the costs are worth it because they want their citizens to be treated that way. Your Honor, there is nothing in the record that suggests- There is nothing in the record nor has opponents made any showing whatsoever that somehow the money has been lost for some states and therefore we want to protect that money. Separately and apart from that, it is not true that the federal government does not recognize X gender markers. It is true that under the current passport policy, which this court will hear a challenge pertaining to in the next month, it doesn't issue passports with an X marker moving forward currently. But it does not invalidate, and in fact the current policy of the Department of State does not call into question the validity of existing passports with X markers which have been provided to people in the United States. And that includes plaintiff in Arruda de la Fuente in this very case. That's in the appendix 113, Your Honor. So not only that, but the federal government does recognize the birth certificates of people from the 16 other states as well as passports from over a dozen countries that include non-binary birth certificates. And indeed, so does Puerto Rico, right? To the extent that they're saying that this would add administrative burden- Last for me, just so I understand the terminology in the statute. The change it made provides the original birth certificate under the statute is called what? Sorry, Your Honor. The original birth certificate under the statute is referred to as what? So it is the original birth record. The original birth record. Correct. And then it now provides for you to get what? So it uses distinct language. It speaks of the original birth record, which cannot be altered and has a sex at birth. And then it allows changes to the gender to the birth certificate, which we call the identification birth certificate. To the birth certificate. And the change to the birth certificate is referring back to the original birth. It allows to the gender to be reflective of either the person's sex at birth or their gender as consistent with their gender. And just so I'm clear, for example, if I wanted to get an updated document, so not the original birth record, because the original birth record, let's say, showed my race as X, and I now want to get a new document that shows my race as different, would I be able to do that under Puerto Rico law? To be honest, Your Honor, I do not know the answer to that question. This provision doesn't allow it, does it? It doesn't speak to it, Your Honor. Okay. It does allow for changes to the name. The separate provisions allow for changes to the parentage. And all of those are familial identity and individual identity fields that have been recognized, including by the Supreme Court in Pavanpe Smith, right, when it allowed for the recognition of same-sex parents to be listed on a birth certificate. Notwithstanding arguments that it wouldn't be reflective of biological reality or historical fact. Thank you. Thank you, Your Honors. If I may, just one brief point. Ultimately, a lot of the bases laid out by the government are built on the single foundation that there is purportedly only two sexes and two genders. We believe that this is both an animus-laden justification, but one that behooves and is contrary to all lived experience, history, and the experience of our very clients. We've laid that out very detailedly in our brief. We ask that this court affirm the district court on a rational basis. But if it does not, we provide alternative grounds, and at a minimum, the district court should have an opportunity to address this. Thank you. Thank you, Your Honors. Thank you, Counsel. At this time, would Counsel for the Appellants please reintroduce himself on the record? He has three minutes. I'm Dino on behalf of Defendants Appellants. I just wanted to clarify a couple of points that our counsel raised. The first one is that he talked about foundational documents and identity documents, and this is something that we strongly disagree with. We think, and as the Sixth Circuit said in Gore v. Lee, this is government speech. We are not regulating conduct. We are not regulating how people identify, how can people identify themselves. So we are not regulating speech at all and conduct, and I think that's important. The second thing I want to say is talk a little bit about the civil code, the text, how it came about after the Arroyo Gonzalez decision. So if we see Article 694, it allows a change in gender. That's the word it uses because that's the Arroyo Gonzalez framework, and that literally copy-pasted what the Arroyo Gonzalez case said. It allows a change in gender between if you submit one of three documents, a passport, driver's license, or a medical certification by a doctor that has a relationship with the patient. That is the exact language that the Arroyo Gonzalez decision said, and it was never the intention of the district court, and there's nothing on the record to say that, that it was never the intention of the district court in Arroyo Gonzalez or the legislative assembly of Puerto Rico to codify something else that is not male or female. And this is also very important to look at the amicus brief from the Senate that was submitted in this case, and the Senate says it was never the intention of the assembly to codify something else. If it's already inclusive or not, or if plaintiffs have a definitional argument because they want to define terms in the birth certificates as otherwise, that's a different question. The third point I will say is that the Massachusetts, the heightened scrutiny argument, that argument wasn't raised below in the briefs. Plaintiffs talked about the Massachusetts case from this court. That's really an animus case. There's no evidence in this record in animus. There's no legislative citation. There's nothing, just the argument that listing or mere reference to sex is animus, and obviously after Scarametti and the Supreme Court's staying war, listing the two sexes cannot be proof of animus, or a change of policy cannot be proof of animus. Also, something that's really important is that the equal protection clause allows for over-inclusive and under-inclusive rationales, right? So if Arroyo-Gonzalez was really an under-inclusive case, that's another question. The other thing I will say is that there's no supplemental jurisdiction or anything that would allow this court to resolve if the civil code, the interpretation of pro-counsel of the civil code is correct. That's a question for the state court, and as a matter of fact, the state court has never interpreted that article, and so for that matter, we think it's outside the scope of this court's jurisdiction. Thank you. I submit the case of the briefs, and I request this court to reverse this court's decision. Thank you. That concludes argument in this case.